223 P.2d 953

**McGRANE v. LUNDVALL et al.**

No. 7646.

Supreme Court of Idaho.

Nov. 10, 1950.

518

J. H. Felton, William J. Jones, Lewiston, for appellants.

Earle W. Morgan, Lewiston, for respondent.

GIVENS, Chief Justice.

March 17, 1948, respondent, a widow, and appellants then husband and wife (the now divorced wife having all their interests) signed a written agreement for the sale by respondent to appellants of a lot and house nearing completion thereon for $7,300 to be paid by: delivery to respondent of a Buick automobile, evidently ultimately valued at $1,500.00, a one-thousand dollar note bearing six percent interest, payable $15.00 per month from May 1, 1948, secured by a mortgage on the premises, and an FHA loan to be obtained and the proceeds thereof to be paid to respondent.

A so-called earnest-money receipt, evidently a real estate broker's blank form, filled out in part accordance with the above agreement, signed as to the receipt by respondent and as to the agreement to purchase by appellants, contained among other recitals these, inferentially acquiesced in by appellants: " * * * if the above sale is approved by the owner * * * and the purchaser neglects or refuses to comply with any of the conditions of this sale and to make payments promptly, * * * then the earnest money herein receipted for shall be forfeited to the undersigned agent to the extent of the agreed upon commission, and the residue to the owner as liquidated damages, * * *."

All of the agreements and documents constituted but one transaction, are part and parcel thereof and are to be construed together.

The written agreements were indefinite and inadequate in many respects and particularly as to who actually was to secure the FHA loan. In any event, the application was signed by the appellant husband April 2, 1948, for a $5,000 loan and approved by an assistant manager of the Intermountain Branch office of the Prudential Insurance Company of America, which Company apparently was to furnish the funds. It contained these provisos:

"4. That the following additional requirements of FHA be complied with and approved:

1. Paint exterior two coats Bondex.
2. Install concrete walk from dwelling to street.
3. Install clothes rod in bedroom closets.
4. Paint basement stairs.
5. Complete dwelling subject to inspection and approval by FHA."

The application was, in effect, cancelled thus: Appellant husband: "A. It was cancelled through the fact that I refused to sign it (evidently the loan application or some necessary step in procuring it) until the house was completed.

"Q. Until the house was completed you refused to sign it. A. When it was brought up to F.H.A. specifications I would sign it, and they got tired of waiting for that and they notified Spokane to cancel it."

Thus, the FHA loan never was secured.

Appellants entered into possession of the house about April 1948 and so far as the record discloses, Mrs. Gravley, the former Mrs. Lundvall, is still occupying it. Appellants paid nothing on the note and mortgage, or otherwise or at all, except by delivery of the Buick automobile.

Immediately, running controversies and disagreements commenced between the parties as to the condition of the property, failure on the part of respondent to complete the house to appellants' satisfaction or so the FHA loan could be secured, and continued occupancy by appellants and their failure to pay, culminating in this suit.

Respondent's essential contentions were, in addition to appellants' refusal to vacate or pay, that the reasonable rent for the property was $75.00 per month, that appellants had committed $500 waste, and asked for forfeiture and cancellation of the agreement of sale, repossession of the property, rent at $75.00 per month, plus $500 waste, or a total of $2,000 and $75.00 per month rent until her repossession and the title to the property be quieted in her, general relief, costs, etc. This is an appropriate action, not for rescission as such, but to bring to a head the failure of both parties to perform, and to determine their present and respective rights. Coe v. Bennett, 46 Idaho 62, at page 68, 266 P. 413.

Appellants' answer denied all such material allegations, alleged appellants were to occupy the house rent free pending its completion, payment of the $1,500, delivery of the $1,000 note and mortgage, asserted willingness to execute the FHA loan when the house could be approved, retention by respondent of the down payment with no offer to return it, failure to complete the house, and that it would require $4,000 to bring it up to FHA specifications, but did not ask for enforcement of the agreement —only for the return of $2,500.00.

The jury found no waste had been committed, awarded respondent $1,500 as rent and repossession of the property. Thus,

by the pleadings, the issues were confined on respondent's part to recovery of rent, waste, repossession of and quieting her title to the property; see Cook-Reynolds Co. v. Chipman, 47 Mont. 289, 133 P. 694; on the part of appellants, recovery of the down payment. Neither party sought to enforce the agreement, i. e., conclude the sale of the property. Appellants further clarified and restricted the issues as to them:

Mr. Felton: "We are asking for our money back so we can give up that shack, your Honor.

The Court: "Yes, you are asking for the money back and also that she keep the property.

Mr. Felton: "We are asking for her money back and we will give up the shanty."

■ The court presented these issues to the jury in Instructions No. 3,[1] No. 4,[2] and No. 5,[3] and while appellants assign as error Instruction No. 5, by their pleading and as indicated in the course of the trial, they did *not* desire possession. Instruction No. 5, therefore, was responsive to the issues presented by the parties.

It was no part of the written agreement that rent was not to be paid and the part of the broker's agreement above quoted provided the down payment was to be retained as liquidated damages, and no matter how poorly the house was constructed or to what extent respondent had failed to complete it and could not have enforced the agreement for its sale, it was habitable enough to be, and was, occupied by appellants from April 10, 1948, apparently to the present time.

■■ Even though one of appellants testified they were to occupy the property rent free, it was only pending completion; thus in contemplation of the fulfillment of the agreement and not indefinitely. Since

1. "You are instructed that if you find by a preponderance of the evidence that the fault lay with the plaintiff, Mrs. Edna McGrane, for the failure to perform the contract of sale, in accordance with the original intent of the parties, then you should return a verdict in favor of the defendant Millicent Ann Lundvall for the return to her of the down payment on said contract, to wit, $1500, less any waste or damage permitted by the defendants to occur to said property." Instr. #3.

2. "If you are satisfied by a preponderance of the evidence that the fault for not completing the performance of the contract of sale, in accordance with the original intent of the parties, lay with the defendants, then you are instructed that the plaintiff would be entitled to the reasonable value of the occupancy of the premises by the defendants from April 10, 1948, and compensation for any waste or damage permitted by the defendants to occur to the property, which sum would be deducted from the down payment of $1500." Instr. #4.

3. "You are further instructed that in the event you find either for the plaintiff or for the defendants you should further find that the property in question should be vacated by the defendant, Millicent Ann Lundvall, and the possession of the same restored to the plaintiff, Mrs. Edna G. McGrane." Instr. #5.

neither party sought to enforce the agreement of sale, and upon its being thus virtually abandoned by both sides, it was at an end, except as bearing upon their relative rights. Under such circumstances, the authorities hold that each party is to be restored as nearly as possible to their status quo. This means as to the vendor, return of the property and recovery, whether it be denominated rent or not, of a sum equal to the value of the use and occupancy of the property, and waste, if any has been committed. As to the vendee, return to the vendee of the purchase price paid, surrender of any instruments providing for and securing installment payments not yet made, less the value of the use and occupation, and any damage suffered. Respondent was, therefore, entitled to rent for use and occupancy of the premises. Mochel v. Cleveland, 51 Idaho 468, at page 482, 5 P.2d 549; 102 A.L.R. 874; Cook-Reynolds Co. v. Chipman, supra; Mitchell v. Hughes, 80 Or. 574, 157 P. 965; Friedrichsen v. Cobb, 84 Mont. 238, 275 P. 267, at page 270; Larson v. Thomas, 51 S.D. 564, 215 N.W. 927, 57 A.L.R. 1246; Kunde v. O'Brien, 214 Iowa 921, 243 N.W. 594; Himebaugh v. Chalker, 261 Mich. 80, 245 N.W. 576; Funk v. Baird, 72 N.D. 298, 6 N.W.2d 569; Kilpatrick v. Smith, 236 Iowa 584, 19 N.W.2d 699; Lutz v. Cunningham, 240 Iowa 1037, 38 N.W.2d 638, at page 647; Passent v. Peter Vredenburgh Lumber Co., 325 Ill.App. 260, 60 N.E.2d 39, at page 40; Huff v. Knight, 54 R.I. 370, 173 A. 121; Schultz v. Freeland, 107 Fla. 286, 145 So. 257; Smith v. Wolf, 50 Ga.App. 19, 176 S.E. 889; Waugh v. Williams, 342 Mo. 903, 119 S.W.2d 223; Schenk's Committee v. Riedling, 294 Ky. 218, 171 S.W.2d 251.

This balancing of the respective rights of the parties, the jury aptly and succinctly carried out by awarding the vendor $1,500 for rent—which coincidentally equalled the down payment—found no waste had been committed, ordered repossession of the property to vendor, and quieting her title.

■ Though not specified in the verdict, this determination by the jury annuls the one-thousand-dollar note and mortgage for two reasons: first, because it was not sought to be foreclosed in the complaint; and, second, it is apparent from the verdict—though negatively indicated—that the jury was, as to money, awarding the $1,500 down payment to the vendor for rent and nothing more.

■ The facts, the bases of this opinion, are without dispute, except as to the value of the rent and even though that was in conflict, there was ample evidence to sustain the conclusion of the jury that respondent was entitled to $1,500, i. e., retain the down payment.

Appellants' assignments of error with regard to the remarks and rulings of the trial court and other matters assigned and argued, have no bearing upon the real issues as ultimately presented by the parties themselves.

522

The judgment of the trial court annulling the agreement for the sale of the house and lot, restoring possession thereof to respondent, quieting her title thereto, and awarding her $1,500, i. e., the down payment as rent, is affirmed. The effect of this judgment is, of course, to cancel the note of $1,000 and the mortgage securing it. Costs awarded to respondent.

PORTER, TAYLOR, and KEETON, JJ., and SUTTON, District Judge, concur.